# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 28, 2009

No. 07-30727

Charles R. Fulbruge III
Clerk

AMBRACO INC; GREAT AMERICAN INSURANCE COMPANY

Plaintiffs-Appellants

v.

BOSSCLIP B V, in personam; DOCKENDALE SHIPPING COMPANY LTD, in personam; FAITH SHIPPING COMPANY LTD, in personam

Defendants-Appellees

-------------------------------------------------------------------------------------------------------

Consolidated With
Case No. 07-31156

AMBRACO INC; GREAT AMERICAN INSURANCE COMPANY

Plaintiffs-Appellants

v.

CLIPPER FAITH MV, her engines, tackle, apparel, furniture, etc, in rem; BOSSCLIP B V, in personam; DOCKENDALE SHIPPING COMPANY LTD, in personam; FAITH SHIPPING COMPANY LTD, in personam

Defendants-Third Party Defendants-Appellees

v.

PACORINI HOLDING, LLC

Defendant-Third Party Plaintiff-Appellant

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Plaintiff-Appellant Ambraco, Inc. ("Ambraco") contracted with Defendants-Appellees M/V Clipper Faith ("Clipper Faith"), Bossclip B.V. ("Bossclip"), Dockendale Shipping Co., Ltd. ("Dockendale"), and Faith Shipping Co., Ltd. ("Faith") (collectively "Vessel Interests") to transport a cargo of bailer twine from Brazil to New Orleans, Louisiana. The cargo was damaged while in the custody of the Vessel Interests or Defendant–Third-Party Plaintiff–Appellant Pacorini Holding, L.L.C. ("Pacorini"), the cargo's discharging stevedore. Ambraco filed a maritime cargo damage case against the Vessel Interests and Pacorini. The district court dismissed the claims against the Vessel Interests for improper venue based upon a forum selection clause in the contracts of carriage, which are known commonly as bills of lading. Ambraco appeals the district court's dismissal of its claims against the Vessel Interests, asserting that the forum selection clause is invalid as a violation of the public policy codified in the Carriage of Goods by Sea Act ("COGSA"), Pub. L. No. 74-521, ch. 229, 49 Stat. 1207 (reprinted in the notes to 46 U.S.C. § 30701).

In a consolidated case, Pacorini appeals the district court's dismissal of its third-party complaint for indemnification against the Vessel Interests. The district court dismissed Pacorini's claims after finding that Federal Rule of Civil Procedure 14(c) was not available because the Vessel Interests were not true "third-party defendants" under Rule 14(c). Pacorini asserts that Rule 14(c) expressly provides that a third-party plaintiff may implead a third-party defendant who may be liable to it for contribution or indemnity. For the following reasons, we affirm in part, vacate in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ambraco delivered several thousand bales of bailer twine to the Vessel Interests, who were to transport this cargo from Brazil to the United States on the Clipper Faith, an ocean-going cargo vessel owned by Faith. Pacorini acted as the cargo's discharging stevedore in New Orleans.

The cargo was covered by seventeen bills of lading, all identical in terms and conditions, issued by Bossclip to the other Vessel Interests. The bills of lading contained three clauses critical to the present dispute:

1. Definitions

(a) "Carrier" means the carrier as stipulated on page 2 of this bill of lading, and insofar as carriage by sea is concerned, the registered owner of the vessel.

2. Jurisdiction

The contract evidenced by this bill of lading shall be governed by English law and any disputes thereunder shall be determined in England by the High Court of Justice in London according to English law to the exclusion of the courts of any other country.

. . . .

5. Clause Paramount

(d) If the carriage is to or from the U.S., the Carriage of Goods By the Sea Act 1936 of the United States ("COGSA") shall apply (whether the goods are stowed on or under deck) . . . .

These bills of lading were issued on December 28, 2005, and their validity is not in question.

When the cargo arrived in New Orleans, Ambraco discovered extensive damage to the bailer twine. Ambraco immediately instituted proceedings to seek compensation from the Vessel Interests and Pacorini for the damage to its cargo. First, Ambraco threatened to arrest, or seize, the vessel to gain *in rem* jurisdiction over the ship. The parties agreed to issue a Letter of

Undertaking in the amount of $2,000,000 to stand in the place of the ship for purposes of any future *in rem* action. On November 14, 2006, Ambraco filed an original complaint in the District Court for the Eastern District of Louisiana against the Vessel Interests. One month later, the named *in personam* appellees—Bossclip, Dockendale, and Faith—filed responsive pleadings raising a defense of improper venue. On March 3, 2007, Ambraco filed a supplemental and amended complaint naming Pacorini as an additional defendant. On May 21, 2007, Faith made a restricted appearance as the owner of the Clipper Faith to defend Ambraco's *in rem* action.

On April 26, 2007, the *in personam* Vessel Interests filed a motion to dismiss Ambraco's claims based upon the forum selection clause contained in the bills of lading. The district court dismissed the entire case on May 25, 2007. The district court held that the forum selection clause in the bills of lading required all disputes to be adjudicated in the High Court of England. Thus, the district court held that it lacked jurisdiction over the claim. Although Ambraco had amended its complaint to include a claim against Pacorini, Pacorini had not appeared by the time the district court dismissed the suit.

Ambraco moved under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. In support, Ambraco submitted an affidavit on issues of English law from English solicitor Mark Andrew Lloyd ("Lloyd"). The Vessel Interests disputed the motion to alter or amend the judgment and contested the introduction of Lloyd's affidavit. The district court denied Ambraco's motion to alter or amend the judgment, again concluding that the forum selection clause was valid and divested the district court of jurisdiction over the claim.

The district court did, however, partially reopen the case, clarifying that its judgment dismissing the Vessel Interests' claims did not extend to Ambraco's claims against Pacorini. The district court also asserted jurisdiction over the

Letter of Undertaking, thus maintaining jurisdiction over the *res*. On July 18, 2007, Pacorini filed an answer and a third-party complaint under Federal Rule of Civil Procedure 14(c), naming the dismissed Vessel Interests as third-party defendants to Ambraco's suit against Pacorini. On October 3, 2007, the Vessel Interests filed a motion to dismiss Pacorini's claims and the district court granted this motion on November 5, 2007, holding that Rule 14(c) was not available to implead parties previously dismissed from the suit. After denying Pacorini's motion for reconsideration, the district court granted Pacorini's motion to certify the order dismissing the third-party complaint as a final judgment under Federal Rule of Civil Procedure 54(b). The court entered final judgment dismissing the case with prejudice on January 10, 2008.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had admiralty jurisdiction over the case pursuant to 28 U.S.C. § 1333. This court has jurisdiction under 28 U.S.C. § 1291, as the appeal arises from a final judgment entered by the district court.

This court reviews the district court's decision to enforce a forum selection clause de novo. *Ginter ex rel. Ballard v. Belcher*, *Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). "Our de novo review under either Rule 12(b)(1) or Rule 12(b)(3) requires us to view all the facts in a light most favorable to the plaintiff." *Id.* at 448 (Dennis J., dissenting).[1] "Moreover, under both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Id.* at 449 (citing *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.

---

[1] "[T]his court on at least [three] previous occasions has declined to address the 'enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under FED. R. CIV. P. 12(b)(1) [or] 12(b)(3).'" *Ginter*, 536 F.3d at 448 (Dennis J., dissenting) (quoting *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005)); *see Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997). We once again decline to settle this dispute.

2008) ("[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (internal quotation marks omitted))); *Murphy v Schneider Nat'l Inc.*, 362 F.3d 1133, 1138–40 (9th Cir. 2004) (holding that, in the absence of factual findings made by the district court based upon an evidentiary hearing, affidavits and other evidence submitted by the non-moving party in the context of a Rule 12(b)(3) challenge are to be viewed in the light most favorable to that party).

This court also reviews the district court's order dismissing Pacorini's third-party claims de novo. *See Lane*, 529 F.3d at 557.

## III. ANALYSIS

### A. Enforcement of the Forum Section Clause

On appeal, Ambraco argues that the forum selection clause in the bills of lading are invalid as the forum selection clause contradicts the public policy evidenced in COGSA, specifically § 3(8), which limits a common carrier's freedom to lessen the minimum liability contained in the Act.[2] The district court held that the forum selection clause did not violate public policy and that the clause, as enforced, divested the court of jurisdiction.

Section 3 of COGSA provides "explicit standards of conduct, and it is designed to correct specific abuses by carriers." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534 (1995). "In the 19th century it was a prevalent practice for common carriers to insert clauses in bills of lading

---

[2] Ambraco has filed what it terms a "protective claim" in the High Court of Justice in London. The Vessel Interests suggest that by filing this claim in the English courts, Ambraco has tacitly acknowledged that the English courts are the correct forum in which to seek relief. The district court correctly concluded that Ambraco's pursuit of its claim in England, and thereby its attempt to protect its interests in English courts, was nothing more than common sense.

exempting themselves from liability for damage or loss, limiting the period in which the plaintiffs had to present their notice of claim or bring suit, and capping any damage awards per package." *Id.* at 534–35. COGSA imposes "substantive obligations and particular procedures" with which carriers participating in international maritime commerce must comply; most critically, "§ 3(8) prohibits a carrier from altering [its substantive obligations] to its advantage in a bill of lading." *Id.* at 535. Section 3(8) provides,

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

COGSA § 3(8).

While COGSA states that carriers may not lessen their liability beyond that stipulated to by law, COGSA does not prohibit parties from agreeing to enforce the bill of lading provisions in a particular forum. *Sky Reefer*, 515 U.S. at 535.[3] Thus, a choice-of-forum clause is presumptively valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). It will, however, be "held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* The critical inquiry to determining whether a clause violates public policy is whether "the choice-of-forum and choice-of-law clauses operated

---

[3] COGSA was "the culmination of a multilateral effort" to establish "a uniform system of international rules governing carrier and shipper liability." *Haynsworth*, 121 F.3d at 968. The international community developed this uniform system, known internationally as the Brussels Convention for the Unification of Certain Rules Relating to Bills of Lading, Aug. 25, 1924, 51 Stat. 233, 120 L.N.T.S. 155 ("Hague Rules"), specifically to govern disputes such as that before us—disputes over the liability of shippers and carriers participating in international trade. The Hague Rules and COGSA—the domestic version of the Hague Rules—are meant to be applied in international forums of dispute resolution. *See Sky Reefer*, 515 U.S. at 536–37.

in tandem as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *see Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997) (per curiam); *see also Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (recognizing the holding in *Mitsui* as binding precedent that rejected a distinction between foreign arbitration clauses and forum selection clauses). "The party resisting enforcement on these grounds bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (quoting *Bremen*, 407 U.S. at 17).

Ambraco presents two arguments for why enforcement of the forum selection clause and the choice-of-law provisions would lessen the statutory remedies available under COGSA. First, Ambraco argues that English courts will not recognize the Vessel Interests as "carriers," thus impermissibly lessening the Vessel Interests' liability below that which COGSA guarantees. Second, Ambraco argues that English courts do not permit *in rem* actions, and that the right to an *in rem* action is substantively guaranteed.

### 1. *In personam actions*

It is undisputed that the bills of lading provide that the English High Court is the forum for all disputes. English courts have "repeatedly [been] recognized to be fair and impartial." *Haynsworth*, 121 F.3d at 967. As the Supreme Court stated, "Plainly, the courts of England meet the standards of neutrality and long experience in admiralty litigation." *Bremen*, 407 U.S. at 12. Thus, English courts themselves may be presumed to be fair. The Supreme Court's decision in *Sky Reefer* requires us, however, to look beyond this presumption of fairness to discern whether the English courts, in addressing the present dispute, will impermissibly limit the Vessel Interests' liability.

8

The clause paramount of the bill of lading provides that "[i]f the carriage is to or from the U.S., the Carriage of Goods By the Sea Act 1936 of the United States ("COGSA") shall apply." Despite this clause paramount, Ambraco asserts that English courts will apply English law. A brief examination of English decisions, however, suggests that English courts are likely to apply COGSA if the parties intended American law to govern the dispute. For example, the Queen's Bench (a subdivision of the English High Court) considered what role American law should play when an "English law charter-party[4] incorporates an USA clause paramount" in *Mauritius Oil Refineries Ltd. v. Stolt-Nielsen Nederlands B.V. (The Stolt Sydness)*, [1997] 1 Lloyd's Rep. 273. The "clause paramount" at issue expressly incorporated COGSA into the bill of lading. *Id.* at 274. The English court considered what effect to give this clause paramount and held that, generally, the terms of COGSA would be incorporated as terms of the contract. *Id.* at 281. Thus, the English court honored the clear intention of the parties to incorporate COGSA into the contract.

The English House of Lords, in *Scruttons Ltd. v. Midland Silicones, Ltd.*, 1962 WL 21259, [1962] A.C. 446 (H.L.), considered whether "stevedores, who admittedly by their negligence caused damage to certain cargo consigned to the [plaintiffs] under a bill of lading . . . , can take advantage of a provision for limitation of liability contained in that document," *id.* at 465. The bill of lading

---

[4] Black's Law Dictionary defines "charter-party" as

[a] contract by which a ship . . . is let to a merchant for the conveyance of goods on a determined voyage to one or more places. . . . The term "charter party" . . . designates the document in which are set forth the arrangements and contractual engagements entered into when one person . . . takes over the use of the whole . . . of a ship belonging to another.

BLACK'S LAW DICTIONARY 162 (6th ed. 1991).

9

at issue included a choice-of-law provision which stipulated that COGSA would apply to all disputes over the transportation of the cargo. *Id.* at 449. The stevedores argued that the bill of lading contained a clause limiting liability for all "carriers," which they asserted COGSA defines as including stevedores. *Id.* The House of Lords found that there was "no reason for saying that the word 'carrier' either in the bill of lading or in the United States [COGSA] means or includes a stevedore." *Id.* at 466. The court relied upon *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297 (1959), in which the Supreme Court held that COGSA did not define "carrier" to include stevedores and did not intend the limitation on liability to extend to stevedores, *id.* at 302–03. Although the English court eventually applied English law to fill the gaps left by the American law, this decision persuades us that English courts will honor the parties intention to apply COGSA and make every attempt to comply with American law.

In addition, Ambraco has provided no convincing evidence that an English court, applying COGSA, would impermissibly limit the Vessel Interests' liability.[5] Thus, this court must assume that English courts of law would honor

---

[5] Ambraco has provided two sources of support for its contention that English courts will lessen the Vessel Interests' liability, neither of which provide this court much guidance. First, Ambraco urges this court to consider an affidavit by English solicitor Lloyd. Lloyd's affidavit discusses only the English courts' application of English law to disputes such as these, not the English courts' application of COGSA. In fact, Lloyd begins his analysis "on the basis that English law would be deemed to be applicable." In addition, Ambraco relies upon a decision out of the Southern District of New York; however, the case is distinguishable from the facts at hand because it too considered only an English court's interpretation of English law, not the English court's interpretation of COGSA. *See Cent. Nat'l-Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F. Supp. 2d 675 (S.D.N.Y. 2002). As discussed above, this court has not been asked to decide whether English courts applying English law would lessen liability beyond that required by COGSA, but rather, whether English courts applying COGSA will impermissibly lessen the Vessel Interests' liability. We find Ambraco's submissions on this point unhelpful.

the clause paramount in the bills of lading and apply COGSA to the dispute at hand. Accordingly, we hold that Ambraco has not met its high burden of proving that "the choice-of-forum and choice-of-law clauses operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi*, 473 U.S. at 637 n.19.

## 2. *In rem actions*

Ambraco also argues that enforcement of the forum selection clause would lessen the Vessel Interests' liability because of the unavailability of an *in rem* action against the Clipper Faith. English courts no longer recognize an *in rem* action "when the ship owner is entitled to sovereign immunity, nor when the plaintiff has already obtained [or is seeking] judgment against the shipowner in personam in relation to the same dispute." Martin Davies, *In Defense of Unpopular Virtues: Personification and Ratification*, 75 TUL. L. REV. 337, 342 (2000). Thus, if an *in rem* action is a substantive right protected under COGSA § 3(8), a failure to provide an *in rem* action might be unreasonable as against COGSA public policy. *See Allianz Ins. Co. v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 794 (E.D. Va. 2000). We need not, however, decide this thorny issue here. The district court's preservation of jurisdiction over the ship—here in the form of a surety bond—moots issue of the need for a separate *in rem* action. *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 107 (2d Cir. 2002) (per curiam) (holding that "[a] letter of undertaking replaces the vessel as the *res* and moots the question of the need for separate *in rem* claim").

Accordingly, we hold that Ambraco has not proven that the enforcement of the forum selection clause in the bills of lading would violate public policy. Ambraco's failure to meet this heavy burden is fatal to its claim. *Cf. Sky Reefer*, 515 U.S. at 537 (holding that "[i]t would also be out of keeping with the objects

of the [Hague Rules] for the courts of this country to interpret COGSA to disparage the authority or competence of international forums for dispute resolution" absent a showing that the foreign court would issue a holding contrary to public policy).[6]  We therefore affirm the district court's order dismissing Ambraco's claims against the Vessel Interests.

## B.  *Rule 14(c)*

In a consolidated case, Pacorini appeals the district court's dismissal of its claim for contribution or indemnity under Federal Rule of Civil Procedure 14(c). The district court dismissed Pacorini's Rule 14(c) tender of the Vessel Interests to Ambraco and Pacorini's claims against the original defendants/third-party defendants.  The district court held that Rule 14(c) was not available to bring claims against third-party defendants who had already been a party to the suit as original defendants, and it suggested that the proper mechanism for bringing these types of claims was through Rule 13(g).  Pacorini appeals only that part of the district court's order which dismissed its claim for contribution or indemnification against the Vessel Interests.[7]

---

[6] The Vessel Interests also argue that even if the English courts were to interpret the term "carrier" narrowly, Ambraco would still be able to recover the full amount of its loss from Faith.  The Vessel Interests point to no authority to support their contention.  Thus, their argument is insufficient to raise the claim on appeal and they have waived it.  *See* FED. R. APP. P. 28(a)(9) (requiring an appellant to state its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).

[7] The district court, however, properly dismissed Pacorini's tender of the Vessel Interests to Ambraco.  Ambraco's direct action against the Vessel Interests had already been dismissed pursuant to the forum selection clause and any tender would violate the public policy—announced in *Bremen,* 407 U.S. at 9—of enforcing forum selection clauses.  *See Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909–12 (5th Cir. 2001) (refusing "to create a Rule 14(c) exception that would allow third parties unilaterally to nullify an arbitration clause," and staying the litigation below pending the outcome of the arbitration).

The district court held that Pacorini could have brought its claims against the Vessel Interests by asserting a cross-claim under Rule 13(g). Rule 13(g) provides,

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

FED. R. CIV. P. 13(g). By its terms, Rule 13(g) requires the cross-claimant to be a party to the lawsuit at the time the cross-claim is asserted. However, by the time Pacorini asserted its claims against the Vessel Interests, the Vessel Interests had already been dismissed from the suit and were no longer a party to the underlying suit; thus, a cross-claim under Rule 13(g) was no longer an available mechanism for asserting Pacorini's claims against the Vessel Interests. The district court therefore erred in holding that Pacorini's claims could have been properly brought under Rule 13(g).

Instead, Pacorini properly brought its claims pursuant to Rule 14(c). Rule 14(c) provides,

> (1) Scope of Interpleader. If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(I) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.
>
> (2) Defending Against a Demand for Judgment for the Plaintiff. The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the

13

third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

FED. R. CIV. P. 14(c). That is, Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff. *See Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 399–400 (5th Cir. 2003) (recognizing that Rule 14(c) allows a third-party plaintiff either to seek contribution from the third-party defendant directly or to tender the third-party defendants to the plaintiff). In addition, the Rule requires the third-party plaintiff (1) to assert an action sounding admiralty or maritime, (2) that arises out of "the same transaction, occurrence, or series of transactions or occurrences" as the plaintiff's original claim, and (3) over which the district court has jurisdiction. FED. R. CIV. P. 14(c).

All parties agree that Ambraco asserted an admiralty claim under Rule 9(h) and that Pacorini's claim for indemnity against the Vessel Interests stems from the same transaction as Ambraco's original cause of action. The district court had jurisdiction over Pacorini's claims against the Vessel Interests pursuant to 28 U.S.C. § 1333. Having met the three preconditions for asserting a claim under Rule 14(c), we can see no other justification for denying Pacorini the right to pursue its indemnification claims against the Vessel Interests. Although it is true that the forum selection clause requires the Vessel Interests and Ambraco to settle their dispute in English courts, Pacorini is not bound by a similar forum selection clause that would limit the district court's jurisdiction. Thus, we see no reason to sustain the district court's dismissal of Pacorini's claims.

14

We do, however, recognize that it would be the height of judicial inefficiency to conduct two separate inquiries into fault arising from the same transaction, as would happen were Pacorini's action to proceed concurrent with or even in advance of Ambraco's cause of action against the Vessel Interests in the English court. For this reason, the district court, on remand, may consider staying Pacorini's claims pending a resolution of the English court's adjudication of Ambraco's claims against the Vessel Interests. *See Pac. Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 242–43 (5th Cir. 1985) (recognizing the propriety of staying a third-party plaintiff's claims for indemnity and contribution pending arbitration). Such a resolution, however, is left to the sound discretion of the district court. *See Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (recognizing that the district court's discretionary authority to issue a stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants")).

For these reasons, we vacate the district court's dismissal of Pacorini's claims for contribution and indemnification and remand for further proceedings consistent with this opinion.

## IV. CONCLUSION

The forum selection clause in the bills of lading divested the district court of jurisdiction over Ambraco's claims against the Vessel Interests. Although Ambraco must bring its claims against the Vessel Interests in England, Pacorini may seek indemnification and contribution from the Vessel Interests in federal district court. Accordingly, we affirm in part, vacate in part, and remand.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.