**JOO SENG HONG KONG CO., LTD., Plaintiff,**

v.

**S.S. UNIBULKFIR, her engines, boilers, etc. and Grand Wisdom Transports, Inc., Transamerican Steamship Corp., and Cook Industries, Inc., Defendants.**

**No. 78 Civ. 2439 (LBS).**

United States District Court, S. D. New York.

Oct. 23, 1979.

Vincent, Berg, Russo, Marcigliano & Zawacki, Alfred J. Will, New York City, for plaintiff.

Donovan, Maloof, Walsh & Kennedy, Richard E. Repetto, New York City, for defendant Transamerican S. S. Corp.

Symmers, Fish & Warner, William Warner, New York City, for defendant Cook Industries, Inc.

OPINION

SAND, District Judge.

This action is brought by a cargo interest, Joo Seng Hong Kong Co., Ltd. ("Joo Seng"), a company organized under the laws of Hong Kong, to recover damages of some $85,000 for the short shipment or non-delivery of approximately 371.28 metric

tons of soybean. The defendants are the S.S. "Unibulkfir", the ship which carried the soybean, Grand Wisdom Transports, Inc. ("Grand Wisdom"), a Liberian corporation which owns the Unibulkfir, Transamerican Steamship Corp. ("Transamerican"), a Delaware corporation and the disponent owner or time charterer of the Unibulkfir, and Cook Industries, Inc. ("Cook"), a corporation of "one of the states of the United States", which acted in a variety of capacities during the events connected with this litigation. Cook sold the soybean to Joo Seng and was both the "shipper" to whom the bills of lading described herein were issued, and the voyage charterer of the Unibulkfir during the shipping and transportation period.[1]

Cook now seeks an order pursuant to F.R.Civ.P. 81(a)(3) and 9 U.S.C. §§ 3 and 6 staying trial of plaintiff's claim against Cook pending arbitration.[2] Cook urges that Joo Seng's claim against it arises out of the contract entered into by the two parties on December 19, 1975, for the sale of 14,000 metric tons of soybean, and that that contract incorporates a provision calling for arbitration of the parties' disputes.[3] Plaintiff opposes the motion on the ground that this dispute arises not out of the contract of sale, but out of the bills of lading, and that Cook, as a charterer, is a "carrier" who is liable on those bills. Accordingly, plaintiff claims that this suit is subject to the terms of the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA"), which entitles plaintiff to a judicial resolution of its claims in a federal forum.

For the reasons stated herein, defendant's motion for a stay is denied, and the parties are directed to proceed with this law suit unless there is consent by plaintiff to a local arbitration.[4]

I. *The Factual Background*

The December 19, 1975 contract between Cook and Joo Seng called for the shipment from a "U. S. Gulf port" to Jakarta/Surabaya, Indonesia of 14,000 metric tons "Number Two Yellow Soybeans, 10 percent more or less at Seller's [Cook's] option", at $196.00 per metric ton. On the same day,

---

1. In fact, while Cook was the seller and voyage charterer involved herein, Cook Export Corp., apparently a wholly owned subsidiary of Cook, was the shipper whose name appears on the bills of lading. At oral argument, however, Cook's counsel stated that no distinction between the two entities is raised for purposes of this motion, and they are, therefore, treated as one entity herein.

2. Cook also seeks a stay of defendant Transamerican's cross-claim against it on the ground that the Charter Party between Cook and Transamerican incorporates the "New York Produce Exchange Arbitration Clause", which provides for arbitration of disputes arising out of the Charter Party. Since Transamerican has informed the Court that it concedes both that it is bound by the aforementioned arbitration clause and that Cook has a right to arbitrate this dispute, Cook's motion to stay the cross-claim is granted.

3. The last clause of the Joo Seng-Cook sale contract states the following:
"OTHER CONDITIONS: All other terms and conditions of F.O.S.F.A. 24 and North American Grain Charter Party 1973 (NORGRAIN) or Baltimore Form C to apply when not in contradiction with the above."
"F.O.S.F.A. 24", the Federation of Oils, Seeds, and Fats Associations Ltd. standard soybean sale contract, provides for arbitration "in London (or elsewhere if so agreed) . . . .". Both NORGRAIN and Baltimore Form C include provisions for arbitration in both London and New York, with the parties to delete the inapplicable provision. Since no deletion was made, and since no other agreement by the parties on the arbitration question exists, Cook argues that the clearest indication of the parties "intent" as to an arbitration site is the F.O.S.F.A. 24 designation of London. On the other hand, Joo Seng urges that, should the Court conclude that this dispute is governed by the contract rather than the bills of lading, it should also find that the parties did not reach an agreement concerning the arbitration site. Plaintiff asks that if these proceedings are stayed for arbitration, the arbitration should go forward in New York, where the Cook-Transamerican claim will be arbitrated. In light of our decision on defendant Cook's motion for a stay of plaintiff's claims against it, there is no need for this Court to determine the site for arbitration under the contract.

4. Plaintiff is encouraged by the Court to consent to a local arbitration. Since the Cook-Transamerican dispute will now be arbitrated in New York, *see* note 2, *supra,* such consent will bring all claims arising out of this same series of events before one convenient forum.

Cook entered into a Voyage Charter Party with Transamerican for the soybean shipment described in the Cook-Joo Seng contract. Under the Charter, which was a standard 1913 "Baltimore Form C—Berth Grain Charter Party", Cook was to pay a set freight rate per ton and its employees or agents were to load and unload ship's cargo. The Captain, apparently an employee of the owner Grand Wisdom,[5] was directed by the agreement to "sign Bills of Lading, as presented, without prejudice to" the Charter Party.

On January 15, 1976, three bills of lading covering the soybean shipment were issued to Cook and signed "For The Master" of the Unibulkfir. The parties have made no allegations as to who actually signed the bills, although Cook stated at oral argument that the bills were issued "by the master". The three bills are identical except as to the quantity of soybeans covered. Cook appears as both shipper and consignee, and each of the three documents was subsequently indorsed by Cook to Joo Seng. No date appears on the endorsement.

The soybeans were loaded aboard the Unibulkfir on January 15, 1976. On arrival in Indonesia, the cargo was found to be 371.28 metric tons short. There are no specific allegations as to the cause of the shortage.

II. *Liability Under a COGSA Bill of Lading*

Plaintiff's opposition to Cook's motion for a stay is based on the claim that Cook, as charterer, is a "carrier" under COGSA, and is therefore liable under the bills of lading. Cook responds that since it did not "issue" the bills, it cannot be liable under them. The issue, then, is whether Cook is a "carrier" for COGSA purposes and whether in order for Cook to be so considered, it must have issued the bills of lading.

 Every bill of lading which evidences a contract for the carriage of goods by sea

to or from ports of the United States, in foreign trade, including bills of lading issued under or pursuant to a charter party, is subject to COGSA. 46 U.S.C. §§ 1300 and 1301(b). COGSA imposes *in personam* liability upon "carriers" of goods by sea. 46 U.S.C. § 1302. *See Yeramex International v. S.S. Tendo,* 595 F.2d 943, 945 (4th Cir. 1979). Although the statute provides no precise definition for the term "carrier", it clearly suggests that the term is not limited to a party who signs the bill of lading. Under the definitional section of COGSA, the "term 'carrier' *includes* the owner or the charterer who enters into a contract of carriage with the shipper." 46 U.S.C. § 1301(a). (Emphasis added.) Under the statute's general liability section, the carrier upon whom liability is imposed is described as "the carrier in relation to the loading, handling, stowage, carriage, custody, care and discharge" of the goods. 46 U.S.C. § 1302. While the statute thus leaves much to judicial interpretation, the question whether Cook is liable to the plaintiff "under" the bills of lading as a carrier is not one which turns on whether Cook "issued" the bills in a strict, commercial law sense.

The case law interpreting COGSA provides surprisingly little guidance on the question of who is properly characterized as a carrier for COGSA purposes or on the factors to be considered in making such a determination. Typically faced with a cargo interest plaintiff and several defendants, including at least one charterer, courts in most COGSA cases approach liability questions from the perspective of an inquiry as to who issued the bill of lading, and tend not to explicitly address the question of who qualifies as a COGSA carrier.[6] The result is a focus on a variety of factors designed to throw light on the question of "issuance". The factors looked to include: who signed the bill of lading, on whose form the bill was issued, and whether au-

---

5. The record is silent as to who employed the master, and the Grand Wisdom-Transamerican Time Charter Party has not been presented to the Court. The ship's master, however, is generally an employee of the owner.

6. Of course, the "issuance" inquiry is designed to identify the COGSA carrier. The point here is that limiting carriers to "issuers" is an unnecessarily restrictive interpretation of the statutory term. See discussion *infra*.

thority was given by one party to sign for another.

Despite the difficulty of distilling consistent principles from the existing case law, two things can be said with some certainty. The first is that more than one party is frequently held liable to a cargo interest under a COGSA bill of lading. *See, e. g., Gans S. S. Line v. Wilhelmsen,* 275 F. 254 (2d Cir.), *cert. denied, Barber & Co. v. Wilhelmsen,* 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921) (owner, time charterer and voyage charterer); *Aljassim v. S. S. South Star,* 323 F.Supp. 918 (S.D.N.Y.1971) (owner and time charterer). Obviously then, there can be more than one COGSA carrier of a given shipment. Second, the courts have not hesitated to impose liability on charterers or owners who are non-signatories to a bill of lading and who cannot in any real sense of the word be said to have issued the bill. In doing so, the courts typically look for some evidence tying the party to the bill involved.

Thus, in *Gans S. S. Line v. Wilhelmsen, supra,* a suit for breach of a time charter party, it was necessary for the court to determine who was liable on bills of lading actually signed by a voyage charterer with authority from the master. The court found that the ship's owner, time charterer and voyage charterer were all liable to the cargo interests. In language still frequently quoted by courts in this and other circuits, the court stated:

> "When . . . the master of a ship chartered but not demised . . . issues bills of lading, we hold that the contract evidenced thereby is not only the ship's contract, and that of the time or other charterer who caused their issue, but that of the owner, whose master (i. e., authorized agent) issued the same. Therefore in this instance the shippers had, beyond the obligation of the ship, the right to look to all three respondents, and hold any or all of them personally liable for right fulfillment of the bills." *Id.* pp. 262–263.

Similarly, in *Trans-Amazonica Iquitos v. Georgia Steamship Co.,* 335 F.Supp. 935 (S.D.Ga.1971), a time charterer and a voyage charterer (the ship's owner was not a party to the action) were held liable to a cargo interest on a bill of lading signed by the master, an employee of the owner. The court acknowledged that the voyage charterer had little to do with the ship, but it pointed to the fact that the bill of lading was printed on the voyage charterer's form and concluded that both charterers were carriers. In *Aljassim v. S. S. South Star, supra,* a time charterer was held liable to both a purchaser and a seller of cargo under a bill of lading signed by the owner's master. The court noted that a "contract of affreightment" had been entered into between the time charterer and the seller, and concluded that that contract plus the bill of lading constituted a contract between the time charterer and "the plaintiffs". Finally, in *Nichimen Co. v. M. V. Farland,* 462 F.2d 319 (2d Cir. 1972), an owner and a time charterer were held liable to a cargo interest under a bill of lading "issued" by the time charterer on behalf of the master. In *Nichimen,* too, the court noted the existence of a contract between the time charterer and the plaintiff.

Although decisions such as these seek to justify the imposition of COGSA carrier liability by finding specific evidence of a "contract of carriage" between the charterer or owner and the cargo interest involved, there is strong statutory support for treating, except in exceptional situations,[7] all owners and charterers involved in the carriage of the goods at issue as COGSA carriers who are potentially liable to cargo interests under the bill of lading. As indicated above, the statutory language of COGSA itself supports a broad definition of the term "carrier". The statute seems to have been deliberately drawn so as not to limit the term to a party to the bill of lading or contract of carriage. 46 U.S.C. § 1301(a).

---

7. Such a situation might arise, for example, where, in a charter party, one party expressly assumes exclusive carrier status, and the charter party is incorporated by reference in the bill of lading. *See e. g., Yeramex International v. S. S. Tendo,* 595 F.2d 943, 945 (4th Cir. 1979).

The liability section in particular appears broad enough to include any number of different parties involved in the shipment and handling of the goods. *See* 46 U.S.C. § 1302. A charterer of a vessel certainly seems to be encompassed within the statutory term, and it would also seem to fit squarely within the common usage of the term "carrier".

The practical result of treating all charterers and owners as carriers would be consistent with COGSA's purpose of alleviating the Congressionally perceived imbalance of bargaining power between carriers and cargo interests. *See e. g., Standard Electrica, S.A. v. Hamburg Sudamerikanische,* 375 F.2d 943 (2d Cir.), *cert. denied,* 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1957). Such an approach would enable cargo plaintiffs to bring suit under COGSA against all those most closely involved with the "loading, handling, stowage", etc. of goods transported by sea; it would also eliminate initial skirmishing between the parties over the identity of the COGSA carrier or carriers and facilitate more consistent judicial decision making. Finally, a broad definition of "carrier" under COGSA will not automatically impose liability upon charterers or owners. As earlier opinions have recognized, see, e. g., *Gans S. S. Line v. Wilhelmsen, supra,* the determination of which parties are COGSA carriers goes largely to the question of who can be sued on the bill of lading by the cargo interests; the ultimate question of liability and the allocation of loss among those found to be carriers is a separate question which turns on individual determinations as to the roles played and the actions taken by the various party defendants. Those determinations should be made either at a judicial proceeding where, subject of course to jurisdictional considerations, all parties are present or, as in the case of the arbitration between Cook and Transamerican, at a separate proceeding designed to allocate fault among the different carriers. The burden of ascertaining the relationships of the various charterers and owners *inter se* should fall upon the charterers and owners, and the determination of such questions should not be a pre-requisite to suit by a cargo plaintiff. Particularly in light of Congress' broad definition of the term, injured cargo plaintiffs should not be burdened by an unnecessarily restrictive judicial interpretation of who may be deemed to be a COGSA carrier.

III. *Conclusion*

Applying this reasoning, it is clear that Cook, as a voyage charterer, is a carrier subject to suit under COGSA on the bills of lading now held by plaintiff Joo Seng. Plaintiff is thus free to seek federal judicial relief on those bills irrespective of its agreement to arbitrate disputes with Cook arising out of the contract of sale. The Court emphasizes again that at this stage it is concerned only with the question of whether Cook is subject to suit under COGSA, and not with the question of ultimate liability.

Even if this Court did not find that owners and charterers are, in most circumstances, COGSA carriers, it seems clear that those courts which have followed the more traditional approach of focusing on the issuance of the bill of lading would also have concluded that Cook, on these facts, could have been sued under the bills involved herein. While no allegations have been made concerning the circumstances surrounding the issuance of the bills, Cook, as shipper or seller, made the representations as to quantity and condition that appear on the bills, and as charterer, was responsible for the loading and discharge of the soybean cargo. Moreover, given the master's obligation under the Cook-Transamerican Charter Party to "sign Bills of Lading, as presented", it seems likely that the bills involved herein were signed at Cook's direction.

Defendant Cook's motion for a stay pending arbitration is denied.