**SAMSUNG AMERICA, INC., Plaintiff,**

**v.**

**M/T FORT PRODUCER, her tackle, boilers, engines, etc., *in rem;* Ditlev–Simonsen, Halfdan & Co.; Sejersted Bodtker, S., & Co. A/S; Portlea Inc.; Canadian Pacific Ships; Canadian Pacific (Bermuda), Ltd.; Canadian Pacific Tanker Services, Inc.; and Ceres Chemical Tankers, *in personam,* Defendants.**

**No. 90 Civ. 2857 (MBM).**

United States District Court,
S.D. New York.

Aug. 28, 1992.

---

Robert J. Brown, Rajnikant D. Jadhav, Chalos, English & Brown, P.C., New York City, for plaintiff.

Thomas H. Healey, New York City, for defendants Canadian Pacific Ships, Canadian Pacific (Bermuda), Ltd. and Canadian Pacific Tanker Services.

## AMENDED OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Samsung America, Inc. brought this admiralty and maritime action to recover damages under the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* (1988) ("COGSA"), for the short-delivery of 46.29 metric tons of liquid caustic soda. Defendant Canadian Pacific Ships ("CP Ships") issued the bills of lading; defendant Canadian Pacific (Bermuda) Ltd. ("CP Bermuda") was the chartered owner; and defendant Canadian Pacific Tanker Services ("CP Tanker") was an agent for CP Bermuda.[1] Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56. Further, plaintiff moves for sanctions pursuant to Fed.R.Civ.P. 11 and 37. For the reasons set forth below plaintiff's motion for summary judgment is granted; plaintiff's motions for sanctions are denied.

## I.

On October 27 and 28, 1988 cargo was loaded on board the M/T FORT PRODUCER at Taft, Louisiana. The Commodity Control Services Corporation ("COMTROL"), an independent surveyor, issued a report and an Official Quantity Certificate showing that 4,194.27 metric tons of liquid caustic soda had been loaded into the ves-

sel's number 8 center tank. (Jadhav Aff. Ex. 4) CP Ships issued five bills of lading confirming receipt of 4,194.27 metric tons. (Jadhav Aff. Ex. 1) The bills of lading incorporated terms of a voyage charter party between Samsung as charterer, and CP Bermuda as the chartered owner, for which CP Tanker signed "as agents only." (Jadhav Aff. Ex. 2)

On or about December 17, 1988, the M/T Fort Producer arrived at the destined port, Ulsan, South Korea, where another independent surveyor, the Korean Inspection & Marine Surveyors Corporation (KIMSCO), measured the quantity of cargo prior to discharge. KIMSCO issued a Certificate of Liquid Gauging, listing that only 4,147.982 metric tons of caustic soda, a shortfall of 46.29 metric tons, were contained within the number 8 tank. (Jadhav Aff.Ex. 5) After the caustic soda had been discharged, KIMSCO issued another Certificate of Liquid Gauging confirming that only 4,145.813 metric tons had been delivered to the shore tanks. (Jadhav Aff.Ex. 5) Thus, 2.169 metric tons were lost in transfer from the number 8 tank to the shore tanks.

## II.

Fed.R.Civ.P. 56(c) requires a summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *See United States v. Diebold, Inc.*, 369 U.S.

1. Plaintiff voluntarily discontinued its claims against the remaining defendants.

654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The disputed issues of fact must be "material to the outcome of the litigation," *id.* at 11, and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* With respect to materiality, "substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### III.

▮ Defendants argue that CP Bermuda and CP Tanker are not liable under COGSA because they were not parties to the bills of lading. Every bill of lading, including one issued under or pursuant to a charter party, evidencing a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, is subject to COGSA. 46 U.S.C.App. § 1301(b); *see Excel Shipping Corp. v. Seatrain Int'l S.A.*, 584 F.Supp. 734, 746 (S.D.N.Y.1984); *Joo Seng Hong Kong Co. v. S.S. Unibulkfir*, 483 F.Supp. 43, 45 (S.D.N.Y.1979).

COGSA imposes liability on "carriers" of goods by sea. The definition of "'carrier' includes the owner or the charterer who enters into a contract of carriage with the shipper." 46 U.S.C.App. § 1301(a). In *Joo Seng*, the court found strong statutory support for treating all owners and charterers involved in the voyage as COGSA carriers,

except when one party expressly assumes exclusive carrier status. *Joo Seng Hong Kong*, 483 F.Supp. at 46; *see also Excel Shipping Corp.*, 584 F.Supp. at 747. The charterers and owners bear the burden of proving their relationships *inter se*, and thus, their liability. *Joo Seng Hong Kong*, 483 F.Supp. at 47. Furthermore, the owners and charterers bear the burden of ascertaining the allocation of loss among themselves. *Id.*

In the case at hand, CP Ships, as issuer of the bills of lading, is liable under COGSA. *Excel Shipping Corp.*, 584 F.Supp. at 746. Furthermore, the bills of lading expressly incorporate COGSA. *See Leather's Best Int'l Inc. v. MV "Lloyd Sergipe,"* 760 F.Supp. 301, 308 (S.D.N.Y.1991).

Courts have imposed liability also on owners and charterers who are not signatories to a bill of lading if there is "some evidence tying the party to the bill involved." *Joo Seng Hong Kong*, 483 F.Supp. at 46; *see also, Office of Supply v. Naftoporos*, 1987 AMC 697, 705, 1985 WL 9127. The charter party signed by CP Tanker, as agent for CP Bermuda, included a close tie to the bills of lading in clause "G" of the charter party: "Freight payable to: Owner's [CP Bermuda] account, seven (7) days after signing/releasing Bills of Lading." (Jadhav Aff.Ex. 2) Thus, the charter party made provision for the possibility that CP Bermuda would authorize the bills of lading by signing or releasing them. The letterheads of CP Ships and CP Tanker show identical telephone and telex numbers in the United States. (Jadhav Aff.Exs. 1 and 13) When Samsung wrote to CP Ships requesting an extension of the statute of limitations, CP Tanker responded in the affirmative. (Jadhav Aff.Exs. 11 and 12) The submissions of the parties support a conclusion of a close relationship between CP Ships, and CP Bermuda, in which relationship CP Bermuda had authority to act on behalf of CP Ships. Moreover, defendants have offered no evidence refuting such an affinity; indeed, they have produced no evidence defining the relationship among the three defendants.

## IV.

■ Under COGSA, a plaintiff shipper establishes a *prima facie* case of loss by proving delivery of the cargo to the carrier in good condition, and either arrival of less cargo than was loaded or delivery of the goods in damaged condition. *Spencer Kellogg, Div. of Textron, Inc. v. S.S. "Mormacsea,"* 703 F.2d 44, 46 (2d Cir.1983); *Westway Coffee Corp. v. M.V. Netuno,* 675 F.2d 30, 32 (2d Cir.1982). A plaintiff is not required to prove that the carrier was at fault, or to explain how the damage or loss might have occurred. *Nissho–Iwai Co. v. M/T Stolt Lion,* 617 F.2d 907, 912 (2d Cir.1980). After plaintiff establishes a *prima facie* case, the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions enumerated in 46 U.S.C.App. § 1304(2). *Westway Coffee Corp.,* 675 F.2d at 32.

■ A clean bill of lading, representing that the carrier has no reasonable ground to suspect the listed weight is incorrect, and that it has reasonable means of checking the weight, is *prima facie* evidence of receipt of the listed weight. *Id.* at 33. In this case, defendants contend that the cargo of liquid caustic soda was incorrectly measured. The loading document, issued by COMTROL, did not show the draft of the vessel, whether it was on an even keel, or lower in either the stern or bow, at the time of loading. (Healey Aff. Ex. 1) The absence of such information prevents a correct measurement of the cargo's volume. In response, plaintiff has produced an affidavit of Gary King, the COMTROL surveyor who measured the quantity loaded, and the relevant page from King's field book of records. (Jadhav Reply Aff.Ex. A) King states that he observed the draft of the vessel, that he applied the relevant trim corrections, and that 4,194.27 metric tons is the correct measurement. The King affidavit is conclusive as against the speculations of defendants as to possible drafts or absence of trim corrections.

Defendants have not produced any evidence beyond their bare allegations that the 46.29 metric ton shortage is attributable to an inherent vice of the cargo. King avers that the 2.1 metric ton difference between the amount in the number 8 tank upon arrival in Korea and the amount in the shore tank is due to the clinging of some of the caustic soda to the sides of the tank and along the piping through which it was transferred. However, this does not account for the difference between the measurement of the number 8 tank before and after arrival in Korea.

■ Finally, defendants argue that the shortage is *de minimis*. However, defendants concede that this Circuit does not recognize a 0.5% trade allowance. Moreover, the bills of lading make no reference to such an allowance. *See Kerr–McGee Refining Corp. v. M/V La Libertad,* 529 F.Supp. 78, 85 (S.D.N.Y.1981); *Esso Nederland v. M.T. Trade Fortitude,* 1977 AMC 2144, 2148 (S.D.N.Y.), *aff'd per curiam,* 573 F.2d 1296 (2d Cir.1977). Defendants have not set forth any persuasive reasons for this court to disregard the circuit's holding and to characterize the trade allowance as evidence of imprecise measuring. A trade allowance, in essence, is the tolerance of an imprecise measuring system.

For the reasons above, plaintiff's motion for summary judgment is granted. The case will be referred to Magistrate Judge Gershon for an inquest to determine the amount of damages to which plaintiff is entitled.

## V.

■ Plaintiff has moved also for sanctions pursuant to Fed.R.Civ.P. 11, or in the alternative, pursuant to Fed.R.Civ.P. 37. Rule 11 makes the signature of an attorney or party on a submission to the court,

> a certificate by the signer that the signer has read the [submission]; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.

The legal standard underlying Rule 11 is an objective one, *Norris v. Grosvenor Marketing, Ltd.,* 803 F.2d 1281, 1288 (2d Cir. 1986), but "Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). The Second Circuit has "stressed that [on a Rule 11 motion] 'any and all doubts must be resolved in favor of the signer [of a paper said to have been submitted in violation of the Rule].'" *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1005 (2d Cir.) (quoting *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

■ In their memorandum in opposition to summary judgment, and their affidavits, defendants claimed that the suit was time-barred because it was brought more than one year after the claim arose. Defendants' contention that the suit is barred by the COGSA one-year statute of limitations, 46 U.S.C.App. § 1303(6), objectively appears to have been made in bad faith and, at the very least, was not well-grounded in fact. Plaintiff's written requests to CP Ships for extensions of the time to sue were granted by CP Tanker. (Jadhav Aff. Exs. 11 and 12) Later, CP Tanker advised plaintiff that CP Ships was purchased by another company, which also assented to an extension. (Jadhav Aff.Exs. 13 and 14) Further, defendants offered no basis in existing law or reason to modify existing law to support the conclusion, that CP Tanker did not act for CP Ships. However, because defendant never moved to dismiss the suit as time-barred, plaintiff need not have incurred any expense in connection with the statute of limitations issue, except perhaps the *de minimis* cost of describing the correspondence relating to the extensions. Therefore, Rule 11 sanctions, beyond the finding that defendants' position was groundless, are unwarranted in this case.

■ Fed.R.Civ.P. 37(d) provides for costs and fees for abuse of the discovery process. Plaintiff has not shown that it was hampered in any way by defendants' response to discovery requests, and the basis for the motion therefore seems obscure. As discussed above, the documents provided by defendants bolster plaintiff's case. Having succeeded on its summary judgment motion, plaintiff hardly can claim that there were any "costs [that] would not be necessary had defendants complied with discovery." (Plaintiff's Brief 9)

For the reasons above, plaintiff's motions for sanctions under Rule 11 and Rule 37 are denied.

SO ORDERED.