204 F.Supp.2d 675 (2002)
CENTRAL NATIONAL-GOTTESMAN, INC., Plaintiff
v.
M.V. "GERTRUDE OLDENDORFF," her engines, boilers, etc., and EO Oldendorff, Defendants.
No. 00 Civ. 6425(RLC).
United States District Court, S.D. New York.
May 22, 2002.
*676 Graham, Miller, Neandross, Mullin & Roonan, LLC, New York City (Jeffrey L. Neandross, of counsel), for plaintiff.
Hill, Betts & Nash LLP, New York City (Michael J. Ryan, of counsel), for defendants.

OPINION
ROBERT L. CARTER, District Judge.
Plaintiff Central National-Gottesman, Inc. ("Gottesman") brings this admiralty *677 action to recover for damage to a shipment of 1,735 rolls of fluting paper. Defendant EO Oldendorff ("Oldendorff") moves to dismiss the complaint for improper venue. For the reasons set forth below, the motion is denied.

BACKGROUND
On September 24, 1999, defendant Oldendorff issued a bill of lading, numbered LCLB-1, for the carriage and transportation of 1,735 rolls of fluting paper, allegedly tendered in good order and condition, aboard the vessel M.V. GERTRUDE OLDENDORFF from the port of Laem Chabang, Thailand to the port of Long Beach, California. The M.V. GERTRUDE OLDENDORFF is employed for hire in the common carriage of goods by water and, at all times pertinent to this litigation, was owned, operated, chartered, and controlled by defendant Oldendorff.[1] On October 22, 1999, the M.V. GERTRUDE OLDENDORFF arrived at the port of Long Beach, California and defendant Oldendorff discharged plaintiff's shipment of fluting paper. Upon inspection, it was discovered that the shipment had sustained serious physical and water damage. The damaged rolls were subsequently segregated and sold for salvage.
Plaintiff Gottesman as owner, shipper, consignee, and purchaser of the aforesaid shipment of 1,735 rolls of fluting paper instituted this action on its behalf and on behalf of all other interested parties to recover the sum of $600,000 for damage sustained to the shipment. On January 26, 2001, plaintiff Gottesman also commenced an action in the High Court of Justice, Queens Bench Division, London, UK, in which the registered owner of the vessel, New Resolution Shipping Corp., is named as a defendant.

DISCUSSION
When considering a motion to dismiss for improper venue pursuant to Rule 12(b)(3), F.R. Civ. P., the court has to accept facts alleged in the complaint as true and must construe all reasonable inferences in favor of the plaintiff. Dolson v. New York State Thruway Auth., No. 00 Civ. 6439, 2001 WL 363032, at *1 (S.D.N.Y. April 11, 2001) (Carter, J.); Burrell v. State Farm Fire and Cas. Co., No. 00 Civ. 5733, 2001 WL 797461, at *3 (S.D.N.Y. July 12, 2001) (Koeltl, J.). These benefits of construal aside, the plaintiff ultimately bears the burden of showing that venue is proper once it has been challenged. Imagineering, Inc. v. Lukingbeal, No. 94 Civ. 2589, 1996 WL 148431, at *2 (S.D.N.Y. Apr.2, 1996) (Carter, J.).
Defendant Oldendorff argues that venue is improper in this district because of a forum selection clause in the bill of lading calling for the adjudication of all disputes in London. (Defs.' Mem. of Law at 4-5.) Clause 3 of the bill of lading provides:
Law and Jurisdiction.

*678 Any disputes under the Bill of Lading to be decided in London according to English Law.
(Ryan Aff. Exh. 1.) Oldendorff argues that, given its wording, the forum selection clause is mandatory, thereby barring plaintiff from bringing suit in this district. (Defs.' Mem. of Law at 4.)
Forum selection clauses, in the context of admiralty actions, are presumptively valid. Thyssen, Inc. v. M/V ALPHA JUPITER, No. 96 Civ. 8734, 1997 WL 882595, at *7 (S.D.N.Y. Aug. 15, 1997) (Koeltl, J.) (citing M/S BREMEN v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). So long as the clause is mandatory and exclusive as opposed to permissive, it will be presumed enforceable. See Leasing Service Corp. v. Patterson Enterprises, Ltd., 633 F.Supp. 282, 284 (S.D.N.Y.1986) (Walker, J.); Thyssen, 1997 WL 882595, at *7. Even assuming exclusivity, however, the presumption of validity attaching to a mandatory forum selection clause may be overcome by a clear showing that the clause is unreasonable. M/S Bremen, 407 U.S. at 15, 92 S.Ct. 1907. A clause can be unreasonable if: 1) its incorporation into the agreement was the product of fraud or overreaching; 2) the complaining party will be deprived of its day in court due to the grave inconvenience of the selected forum; 3) the chosen law is manifestly unfair so as to deprive plaintiff of a remedy; or 4) the clause is in contravention of a strong public policy of the forum state. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir.1993).
It is clear that the forum selection clause at issue here is mandatory and exclusive. For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language. Thyssen, 1997 WL 882595, at *7. However, in the situation where only jurisdiction is specified, the clause will generally not be enforced without additional language indicating the intent of the parties to make jurisdiction exclusive. John Boutari & Sons, Wines & Spirits, S.A. v. Attiki Importers & Distribs. Inc., 22 F.3d 51, 52 (2d Cir.1994). "Of course if mandatory venue language is employed, the clause will be enforced" even in the absence of language making jurisdiction exclusive. Id. at 53.
The language of the forum selection clause under consideration here, "[a]ny disputes under the Bill of Lading to be decided in London according to English Law," rather than simply stating that the court in London shall have jurisdiction over all disputes, actually makes explicit that such disputes are to be resolved in that forum and nowhere else. Faced with similar facts and language, numerous courts have reached parallel conclusions. See, e.g., Thyssen, 1997 WL 882595, at *7 ("All disputes arising under and in connection with this Bill of Lading shall be determined by the court in the People's Republic of China" held enforceable); Bison Pulp & Paper Ltd. v. M/V Pergamos, No. 89 Civ. 1392, 1995 WL 880775, at *11 (S.D.N.Y. Nov.29, 1995) (Lowe, J.) ("Any dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business" held enforceable); AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 151 (2d Cir.1984) ("All and any disputes, differences or questions arising from the present Agreement shall be decided and determined by the competent court in Utrecht" held enforceable). In fact, in the seminal case of M/S Bremen, which established standards for the enforceability of forum selection clauses in international transactions, the United States Supreme Court enforced a forum selection clause substantially similar to the one at issue here. M/S Bremen involved an admiralty dispute over the enforceability of a foreign forum selection *679 clause in a contract involving the towing of a drilling rig from Louisiana to a point off Italy. The clause provided that "[a]ny dispute arising must be treated before the London Court of Justice." M/S Bremen, 407 U.S. at 2, 92 S.Ct. 1907. The Court held that this provision was "clearly mandatory and all-encompassing," enforceable unless revealed to be unjust and unreasonable.[2]Id. at 20, 92 S.Ct. 1907. Given these reasons, it necessarily follows that the forum selection clause in this case is mandatory and, therefore, enforceable, provided that it is not unreasonable and unjust.
It is on these latter grounds that plaintiff Gottesman objects to the enforcement of the forum selection clause. Enforcement of the forum selection clause, according to Gottesman, would lessen defendant Oldendorff's liability under the Carriage of Goods by Sea Act ("COGSA" or the "Act"), 46 U.S.C.App. § 1300 et seq., thereby running afoul of the Act and violating public policy. (Pl.'s Mem. of Law at 12-15.) In particular, § 1303(8) of COGSA provides:
Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, . . . or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.
46 U.S.C.App. § 1303(8). Intrepeting § 1303(8) in Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), the United States Supreme Court, after reciting the litany of abuses committed by carriers in the 19th century that the passage of COGSA was intended to curb, see SKY REEFER, 515 U.S. at 534-35, 115 S.Ct. 2322, opined, with respect to a bill of lading, that "were we persuaded that `the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, ... we would have little hesitation in condemning the agreement as against public policy.'" Id. at 540, 115 S.Ct. 2322 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n. 19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Although SKY REEFER involved a foreign arbitration clause, its reasoning has been extended to forum selection clauses as well. See, e.g., Silgan Plastics Corp. v. M/V NEDLLOYD HOLLAND, No. 96 Civ. 6188, 1998 WL 193079, at *2 (S.D.N.Y. Apr.22, 1998) (Martin, J.). In fact, according to SKY REEFER, foreign arbitration clauses are, in general, simply a subset of foreign forum selection clauses. SKY REEFER, 515 U.S. at 534.
The court is persuaded that the forum selection clause at issue here essentially operates as a prospective waiver of Gottesman's right to pursue statutory remedies under COGSA. If the case were decided in London instead of this district, there is a strong likelihood that English courts would give force to an exculpatory clause in the bill of lading, insulating parties other than the shipowner from liability, in violation of COGSA.[3] Clause 19 states:
*680 Identity of Carrier.
The Contract evidenced by this Bill of Lading is between the Merchant and the Owner of the vessel named herein (or substitute) and it is therefore agreed that said Shipowner only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of the contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other is the Carrier and/or bailes [sic] of the goods shipped hereunder, all limitations of and exonerations from liability provided for by law or by this Bill of Lading shall be available to such other.
It is further understood and agreed that as the Line Company or Agents who has [sic] executed this Bill of Lading for and on behalf of the Master is not a principal in the transaction, said Line Company or Agents shall not be under any liability arising out of this contract of carriage, nor as Carrier nor bailee of the goods.
(Ryan Aff. Exh. 1.)
Recovery under COGSA is predicated on a plaintiff's ability to prove a breach of the contract of carriage against a "carrier" of the cargo. See 46 U.S.C.App. § 1302. In deciding which parties to a suit qualify as a carrier within the meaning of § 1302, courts in this district to consider the issue have construed the term expansively to include all owners and charterers participating in the carriage of goods. For example, in Joo Seng Hong Kong Co., Ltd. v. S.S. Unibulkfir, 483 F.Supp. 43 (S.D.N.Y. 1979) (Sand, J.), the court noted that more than one party is often found liable to a cargo interest pursuant to a COGSA bill of lading, thus "there can be more than one COGSA carrier of a given shipment," and that "the courts have not hesitated to impose liability on charterers or owners who are non-signatories to a bill of lading and who cannot in any real sense of the word be said to have issued the bill." Joo Seng, 483 F.Supp. at 46 (citing Gans S.S. Line v. Wilhelmsen, 275 F. 254 (2d Cir.1921)). Furthermore, the Joo Seng court found strong statutory support for a broad construction of the term "carrier" under COGSA. The court wrote:
[T]here is strong statutory support for treating, except in exceptional situations, all owners and charterers involved in the carriage of the goods at issue as COGSA carriers who are potentially liable to cargo interests under the bill of lading.... The [COGSA] statute seems to have been deliberately drawn so as not to limit the term to a party to the bill of lading or contract of carriage.
Joo Seng, 483 F.Supp. at 46. Since the Joo Seng decision, "several courts in this District have interpreted the definition of `carrier' to include parties who did not issue a bill of lading." In re Daewoo Int'l (America) Corp., No. 01 Civ. 8205, 2001 WL 1537687, at *6 (S.D.N.Y. Dec.3, 2001) (Preska, J.) (citing Metallia U.S.A. LLC v. M/V KAPITONAS STULPINAS, No. 98 Civ. 3497, 1998 WL 1039103 (S.D.N.Y. Dec.16, 1998) (Peck, M.J.); Duferco Steel, Inc. v. M/V FESTIVITY, No. 97 Civ. 7898, 1998 WL 474197 (S.D.N.Y. Aug.13, 1998) (Stein, J.); RMS Int'l Shipping v. Stemcor USA, Inc., No. 90 Civ. 4918, 1991 WL 136035 (S.D.N.Y. Jul.18, 1991) (McKenna, J.); Thyssen Steel Caribbean, Inc. v. Palma Armadora, S.A., No. 81 Civ. 6066, 1983 WL 674 (S.D.N.Y. May 19, 1983) (Sweet, J.)). In re Daewoo further refined Joo Seng's holding by noting that "[a] charterer who is not a signatory to the bill of lading could be liable as a carrier if the charterer was involved in some way with the issuance of the bill of lading or the loading of cargo and the plaintiff makes a *681 minimal showing that the defendant's actions contributed to the lost cargo." In re Daewoo, 2001 WL 1537687, at *6 (internal quotations omitted). Despite this, defendant Oldendorff argues that Joo Seng should not control the court's decision and relies, in part, on the Fifth Circuit's holding in Thyssen Steel Co. v. M/V KAVO YERAKAS, 50 F.3d 1349 (5th Cir.1995) rejecting Joo Seng's reasoning. However, the Fifth Circuit requires privity of contract of carriage for COGSA liability to attach which is not the case in this district and, at any rate, is not controlling authority for the court.
The fact that courts in this district have so construed the COGSA definition of "carrier" is crucial because it means that, unless the court in London were similarly prepared to adopt an expansive view of the term "carrier," plaintiff Gottesman would effectively be relinquishing rights that would be guaranteed to it in this forum under COGSA. This alone would violate COGSA and, as a result, would be sufficient grounds to allow the court to retain jurisdiction over the case.
Plaintiff Gottesman has provided an affidavit of Mark Andrew Lloyd, an English lawyer experienced in maritime law, who attests that a London court would not adopt a construction of "carrier" similar to the one in this district and would choose instead to give full effect to Clause 19 of the bill of lading limiting liability to the shipowner alone. (See Neandross Aff. Exh. 3.) In particular, Mr. Lloyd relies on the recent Starsin decision in London to predict that the London court "would hold that this Bill of Lading is one where the contractual carrier was the registered Shipowner and not the time charterer E.O. Oldendorff" and would, therefore, "dismiss any action in contract against E O Oldendorff as time charterers." (Neandross Aff. Exh. 3 at ¶ 43.) Defendant Oldendorff does not seem to quarrel with this conclusion as its principal commentary on the point is that Mr. Lloyd's statements are limited to an action in contract and, as such, do not address the prospects of a suit by Gottesman based on any other theory. (Defs.' Rep. Mem. of Law at 13.)
It is permissible for a court to consult the opinions of foreign attorneys familiar with the intricacies of maritime law in their respective countries and, in reliance thereon, construct an informed picture of how foreign courts may approach an issue. See, e.g., Nippon Fire & Marine Ins. Co. v. M/V SPRING WAVE, 92 F.Supp.2d 574, 576 (E.D.La.2000) (relying, in part, on Japanese attorney's affidavit submitted by plaintiff to hold that forum selection clause in bill of lading is unreasonable because of possibility that Japanese court would interpret clauses in bill of lading as limiting liability in violation of COGSA); Majestic Electronics, Inc. v. M/V JIN He, No. CV98-6750GHK(CWX), 1999 WL 694186, at *1 (C.D.Cal. May 10, 1999) (refusing to enforce forum selection clause because plaintiff produced sufficient evidence in the form of an affidavit from a Chinese attorney that Chinese courts may apply clause in bill of lading literally so that defendant's obligations may be reduced below the threshold set by COGSA). Given the evidence offered by Gottesman, the court is of the view that there is a real danger that a London court may not hold defendant Oldendorff, as time charterer, to the same duties that he would be expected to comply with were the action brought in this district under COGSA.
Notwithstanding Mr. Lloyd's affidavit, defendant Oldendorff relies on Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) and Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993) to argue that the fact that foreign law is less favorable to a plaintiff is insufficient grounds to allow Gottesman to bring suit in this district. (Defs.' Rep. Mem. of *682 Law at 13-15.) However, Piper Aircraft and Roby are distinguishable as neither decision implicated COGSA and its protections. While it is true that under either normal forum non conveniens analysis or mandatory forum selection clause analysis, the argument that foreign law is less favorable to a party's claims than the law of the United States is unavailing. See, e.g., Piper Aircraft, 454 U.S. at 250, 102 S.Ct. 252; Roby, 996 F.2d at 1360-61; Vigilant Ins. Co. v. Nippon Yusen Kaisha (N.Y.K Line), No. 97 Civ. 7517, 1998 WL 391116, at *2-3, (S.D.N.Y. Jul.14, 1998) (Cote, J.) (holding COGSA inapplicable). Unlike these situations, however, it is precisely in the instance where foreign law is less favorable than COGSA that the guarantees of COGSA come into play and are given full effect. SKY REEFER is instructive on this point:
The central guarantee of § 3(8) is that the terms of a bill of lading may not relieve the carrier of the obligations or diminish the legal duties specified by the Act. The relevant question, therefore, is whether the [foreign] substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees.
SKY REEFER, 515 U.S. at 539, 115 S.Ct. 2322. While it is still true, as such, that under COGSA analysis, foreign law can be, literally, less favorable than that of the United States, the distinguishing feature is that accommodating a party's desire for maximal advantage is not the motivating concern. Rather it is the more pragmatic goal of ensuring that no party, subject to COGSA coverage, enjoys protection short of that guaranteed by the Act.
The court is compelled to decline enforcement of the forum selection clause at issue here for a further reason. An integral component of the Court's reasoning in SKY REEFER was that there existed a subsequent opportunity for the district court to review the foreign court's decision to ensure that it comported with the interest in enforcement of the laws in the United States and was not violative of public policy. SKY REEFER, 515 U.S. at 540, 115 S.Ct. 2322. Absent this opportunity for review, it is readily apparent that the Court would have had a much harder time enforcing the forum selection clause and transferring the case to Japan. See id. ("Were there no subsequent opportunity for review [and foreign law operated to waive COGSA protection] ..., we would have little hesitation in condemning the agreement as against public policy.") (internal quotations omitted). However, this option of retaining jurisdiction is simply not available with respect to the dispute at hand. SKY REEFER involved a dispute over enforcement of a foreign arbitration clause. "The safeguard of retained jurisdiction is therefore not applicable here because this case involves a foreign jurisdiction clause." In re Rationis Enterprises, Inc. of Panama, No. 97 CV 9052, 1999 WL 6364, at *3 (S.D.N.Y. Jan.7, 1999) (Owen, J.); see also Nippon Fire, 92 F.Supp.2d at 577 (holding that forum selection clause should not be enforced, in part, because no procedure existed for retaining jurisdiction after transfer); but see Silgan Plastics, 1998 WL 193079, at *3. Since this precaution, to which SKY REEFER accorded substantial weight, is missing here, the court is reluctant to enforce the forum selection clause and dismiss this action for improper venue.
Finally, this outcome is not inconsistent with previous decisions in this district dismissing COGSA actions for improper venue. For example, in Hyundai Corp. U.S.A. Inc. v. M/V AN LONG JIANG, No. 97 Civ. 3855, 1998 WL 13835 (S.D.N.Y. Jan.15, 1998) (Patterson, J.), the plaintiff advanced an argument virtually identical to Gottesman's. The plaintiff there argued that the foreign forum would apply a more restrictive definition of the term "carrier" *683 than the courts in this district, which meant that plaintiff could sue only the owner or the time charterer in the foreign forum but not both. Although the complaint was dismissed pursuant to a forum selection clause, the decision is distinguishable because the defendant moving to dismiss the case did so only as against it as the carrier which, the court held, meant that plaintiff would not be put to a disadvantageous choice since Korean law would still allow that particular defendant to be sued as a carrier and plaintiff was free to continue its suit against the owner in this district. Hyundai Corp., 1998 WL 13835, at *2. In Abrar Surgery Ltd. v. M.V. JOLLY ORO, No. 97 Civ. 8865, 1999 WL 295003 (S.D.N.Y. May 11, 1999) (Mukasey, J.), the court enforced a forum selection clause but did so, in part, because plaintiffs had not shown which law controls the bill of lading, let alone established that the applicable law lessened the obligations of the carrier in violation of COGSA. Abrar Surgery, 1999 WL 295003, at *2. In Asoma Corp. v. M/V SOUTHGATE, No. 98 Civ. 7407, 1999 WL 1115190 (S.D.N.Y. Dec.7, 1999) (Haight, J.), the plaintiff did not specifically identify any aspect of substantive Korean law that would have reduced defendant's obligations to it, choosing instead to argue that transferring the case would effectively deprive it of a legal remedy since the one-year statute of limitations had expired in the foreign forum. The court found this argument unpersuasive and noted that the appropriate time limit for bringing a claim is not a feature of substantive law that would reduce a carrier's liability or obligations in violation of COGSA. Asoma Corp., 1999 WL 1115190, at *3; see also Chiyoda Fire & Marine Ins. Co. of America v. M/V HYUNDAI FREEDOM, No. 97 Civ. 8474, 1999 WL 694019 (S.D.N.Y. Jan.28, 1999) (Wood, J.) (dismissing complaint for improper venue even though statute of limitations had run in foreign forum). In International Marine Underwriters CU v. M/V KASIF KALKAVAN, 989 F.Supp. 498 (S.D.N.Y.1998) (Rakoff, J.), the foreign forum did not recognize an action in rem against the vessel, thus raising the possibility that plaintiff would be deprived of a right under COGSA if suit were brought there. However, since the vessel had yet to be arrested in this district, the court exercised its discretion to dismiss the in rem action. International Marine Underwriters, 989 F.Supp. at 499. This, in turn, allowed the court to decline jurisdiction with respect to the action in personam since plaintiff could bring such an action in the foreign forum and was not, therefore, at any disadvantage there in violation of COGSA's terms. Id. at 500. Finally, in Vigilant Ins. Co. v. Nippon Yusen Kaisha (N.Y.K Line), No. 97 Civ. 7517, 1998 WL 391116 (S.D.N.Y. Jul.14, 1998) (Cote, J.), the court dismissed plaintiff's complaint pursuant to a forum selection clause because the protections of COGSA were not triggered since COGSA only applies to contracts for carriage of goods by sea to or from ports of the United States and the cargo in question never came to rest at a port of the United States. Vigilant Ins. Co., 1998 WL 391116, at *2 (citing 46 U.S.C.App. § 1312). As such, the fact that numerous courts in this district have dismissed complaints pursuant to mandatory forum selection clauses in cases involving COGSA is not a factor that weighs against plaintiff as these cases are clearly distinguishable. Not one of these cases involved a situation of the type presently before the court, where forcing the plaintiff to litigate in a foreign forum very likely amounted to diminishing its rights below the threshold guaranteed by COGSA. Given the set of facts before the court and the evidence proffered by plaintiff Gottesman, the court is convinced that plaintiff has carried its burden of showing that the forum selection clause in the bill of lading is unreasonable *684 under these circumstances and that venue is, therefore, proper in this district.

CONCLUSION
For the foregoing reasons, the court denies defendant Oldendorff's motion to dismiss the complaint for improper venue.
IT IS SO ORDERED.
NOTES
[1] While it is named in the complaint, the vessel M.V. GERTRUDE OLDENDORFF has not appeared in this district, nor has it been served with process or arrested. (Defs.' Mem. of Law at 2.) Plaintiff Gottesman avers that the vessel will be within this district, at the latest, "during the pendency of this action." (Cplt. ¶ 3.) In such a situation, courts have exercised their discretion to dismiss cases "where no other parties-defendant remained before the court." Itel Container Int'l Corp. v. Atlanttrafik Express Service, Ltd., 686 F.Supp. 438, 445 (S.D.N.Y.1988) (Carter, J.) (citing Vanol USA, Inc. v. M/T CORONADO, 663 F.Supp. 79, 82 (S.D.N.Y.1987) (Sweet, J.)). However, in an in rem and in personam action such as this, "the reasonable course is to allow plaintiff[] the opportunity to perfect service in rem if, at any time while the action in personam goes forward, the vessel[] may be arrested in this district." Itel Container, 686 F.Supp. at 445.
[2] The fact that the forum selection clause at issue here calls for all disputes "to be decided" in London as opposed to stating that they "shall be decided" or "must be decided" does not alter the analysis in view of the fact that the clause still employs language of compulsion.
[3] England has adopted the Hague-Visby Rules, see Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers Ltd., 190 F.3d 64, 70 (2d Cir.1999), a precursor to COGSA, whose purpose is to establish uniformity in ocean bills of lading with regard to the rights and liabilities of carriers and shippers, inter se, trading internationally. See Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 301, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959).